### ARMSTRONG *vs.* McDONALD.

A plaintiff who asserts that a minor is his son, and that he is therefore entitled to recover from the defendant the value of the labor which the minor has performed for him, must, if the defendant deny the relationship, prove that the minor is his legitimate son.

This he can not do, without giving some evidence of a marriage with the mother of the minor previous to the birth of the minor.

The declarations of the plaintiff and his wife, upon that subject, are not evidence in favor of the plaintiff. Nor is the testimony of a witness, that the plaintiff is the father of the witness and of the minor, sufficient.

When a minor makes a contract for his services, on his own account, and the father knows of it, and makes no objection, *it seems* there is an implied assent that the son shall have his earnings.

THIS was an appeal, brought by the defendant John L. Armstrong, from a judgment entered against him in the St. Lawrence county court, in February, 1850, in favor of the plaintiff John McDonald, affirming the judgment of Horace Fenton, esquire, a justice of the peace of said county, rendered in June, 1849, in favor of the plaintiff.   The material facts in the case appear in the opinion of the court.

*Myers & Baldwin,* for the appellant.

*J. Reddington,* for the respondent.

*By the Court,* CADY, J.   Duncan McDonald, an infant, came from Canada, and hired himself to the defendant as a laborer. He commenced working for the defendant in June, 1848, and between that time and May, 1849, he worked for the defendant between seven and eight months.   During that time he received from the defendant money, clothing, &c. to the amount of about $52.   At his request, John McDonald, the plaintiff, a resident in Canada, and who claimed to be the father of Duncan, commenced this action to recover the value of the labor performed by Duncan.   The defendant, in his answer, denied that he was

indebted to the plaintiff. He denied that the plaintiff was the father of Duncan, and entitled to his services. He alledged that he had paid Duncan the full value of his services, and that the plaintiff allowed the said Duncan to contract for himself, and receive pay for his labor.

One question is, did the plaintiff give sufficient evidence that he was the father of Duncan McDonald ? He gave no evidence of a marriage with any one. He gave no evidence that he had, previous to the birth of Duncan McDonald, lived with any woman as his wife. Unless the plaintiff was married before the birth of Duncan McDonald, he could not be entitled to recover from the defendant. Of such marriage he gave no evidence. Duncan McDonald testified, that his mother and the plaintiff had told him that the plaintiff was his father ; that he had lived with the plaintiff as his father. That may all be true, and the plaintiff not be entitled to recover. The declarations of his father and mother were not evidence in favor of the plaintiff.

Roderick McDonald testified that the plaintiff was the father of the witness, and the father of Duncan McDonald. He swore to a fact not within his knowledge ; but the fact may be true, and yet the plaintiff never have been married.

In the case of *The Inhabitants of Raynham* v. *The Inhabitants of Canton,* (3 *Pick.* 293,) on a question as to the settlement of a female pauper, depending on the validity of her marriage, it was held that proof of a marriage *de facto* in another state, is sufficient to throw the burthen of proof on the party impeaching its validity. That case shows, that to charge the inhabitants of a town with the support of a female pauper, on account of her marriage with a certain person, evidence of the marriage must be given. In this case, the plaintiff comes into court and affirms that Duncan McDonald is his son ; that he is, therefore, entitled to recover from the defendant the value of the labor which Duncan has performed for the defendant. The defendant answers, Duncan is not your son. This threw upon the plaintiff the necessity of proving that Duncan was his legitimate son ; and that he could not do, without giving some evidence of a marriage. And as he gave no evidence for the purpose of

proving a marriage, I am of opinion that the judgments of the justice and of the county court ought to be reversed.

Again; according to the testimony of Duncan McDonald, he left the service of the plaintiff in March, 1848. He worked where he pleased for two months in Canada, and in May, 1848, left Canada, and came into the county of St. Lawrence. He worked for various persons till the 8th of June, 1848, and commenced work for the defendant, and worked for him before May, 1849, 7½ months. He went home during that period two or three times. The plaintiff at no time gave the defendant notice that he should claim pay for the work of Duncan McDonald, nor had he, down to the time of trial, set up any claim to be paid for the work performed by Duncan McDonald for any person other than the defendant, in the county of St. Lawrence. He was informed that Duncan McDonald was coming into this state. He did not consent to it, but he made no effort to induce him to return into Canada; nor did he give any notice to any one not to employ or pay Duncan for his labor, but applied to Duncan for money, and promised him a horse if he would let him have money: thus treating him as a person who had a right to act for himself.

In the case of *Whiting* v. *Earl and Trustee,* (3 *Pick.* 202,) it was said by the court, " We go so far as to say, that when a minor son makes a contract for his services on his own account, and the father knows of it, and makes no objection, there is an implied assent that the son shall have his earnings." The plaintiff knew that Duncan McDonald had left Canada, and was in this state. He made no effort to make him return, and gave notice to no one that he should claim pay for Duncan's labor. It appears that this action was commenced at the request of Duncan; and, evidently, for no purpose but to defraud the defendant out of the payments made by him to Duncan. I am of opinion that the justice erred, in deciding that no part of the defendant's account could legally be allowed, except for actual necessaries; and upon that ground, also, the judgment of the justice, and of the county court, ought to be reversed.

Judgment reversed.