### Gustave A. Rau v. Herman J. Trumbull.

1. MEASURE OF DAMAGES—*Sale of Goods.*—The measure of damages for the breach of a contract of sale and delivery of goods is the difference between the contract price and the market price at the place fixed for delivery of such goods.

2. SALES—*Vendee's Right to Recovery for a Breach of Contract.*—Where a vendor fails to deliver goods according to his contract of sale the vendee is not bound to purchase other goods to supply the deficiency. He may recover for a breach of the contract without attempting to do so.

3. INSTRUCTIONS—*When Misleading.*—An instruction which informs the jury that a memorandum in evidence, as evidence of a contract, is not of itself a contract, is calculated to mislead the jury and should not be given.

Rau v. Trumbull.

Assumpsit, for breach of a contract of sale.  Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the October term, 1896.  Reversed and remanded. Opinion filed January 21, 1897.

REMY & MANN, attorneys for appellant.

WILLIAM A. BALL and G. B. ANDREWS, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellant sued the appellee to recover damages for the breach of an alleged contract for the sale by appellee to appellant of fifty tons of turkey feathers, and upon a trial by jury failed to recover, and judgment went against him for costs and he has appealed.

It was admitted that after a conversation held in appellee's place of business in Chicago between him and an agent of the appellant, who was a dealer in feathers in New York, the following paper was executed by appellee and delivered to said agent:

"CHICAGO, ILL., January 7, 1892.

Sold to G. Rau, about 50 tons full fleece turkey body feathers at 4¾ cts., delivered in New York.  One car February, one car March, one car April, one car May, one car June and one car July, 1892, all subject to sight draft on B. L.  All packed in strong burlap bags and weight guaranteed.

H. J. TRUMBULL & Co."

On the one hand, it is claimed that such writing expressed an absolute contract of sale, and on the other, that it was only a memorandum of a proposition by appellee to sell, which required, and was understood to be subject to, acceptance by the appellant, the agent to whom it was delivered disclaiming authority to close a bargain at that time, and evidence in support of each contention was heard.

At the time the above writing was delivered to the agent, he, the agent, marked in ink, on another piece of paper, what

are called shipping directions, consisting of diamond shaped lines with a letter " R " in the middle, and left it with the appellee.

Upon the paper containing such shipping directions, the appellee, either at the same or some subsequent time, added in his own handwriting, in pencil, the following:

" Strong bags; one car turkey body feathers; shipment for February, 1892, March, April, May and June, 4¾ delivered in New York; to be notified not later than the 20th of each month the time feathers are wanted. Failure to notify as above releases H. J. Trumbull & Co. from the trade. January 7, 1892."

It is in dispute when this pencil memorandum was written. Appellee testified that appellant's said agent saw him write it, and read it himself before he went away. On the contrary, the agent testified that he never saw it until it was exhibited to him while testifying.

The first quoted contract, or proposition, came to appellant's hands, and two days after its date he wrote and sent, as he testified, a letter to the appellee, a copy of which is as follows:

"NEW YORK, January 9, 1892.
Messrs. H. J. Trumbull & Co.

GENTLEMEN: I beg to confirm the order given you by Mr. A. Saloman for fifty tons full fleeced turkey body feathers at 4¾ cents per lb., delivered New York, one car load each for the following months of 1892, February, March, April, May, June and July, all subject to sight draft on B/L, and packed in strong burlap bags. Weights guaranteed by you. Bales to be marked (R) and numbered from one up on each shipment.

It would be more convenient for me, if it is suitable to you, to remit on receipt of documents by my check. Please inform me if this will be acceptable.

I shall, for each shipment, inform you about two weeks ahead when the goods must be in New York.

Truly yours,
G. RAU."

The appellee denied the receipt of such letter. That the letter of that date was written, sent to and received by the appellee, is reasonably certain, as may be seen by the immediately following correspondence:

Letter from appellee:

"New York, January 13, 1892.

H. J. Trumbull & Co., Chicago, Ill.

Gentlemen: I beg to confirm my letter of the 9th inst., and return you herewith letter received not intended for me.

Yours truly,

G. Rau."

Letter from appellee to appellant:

"Chicago, Ill., Jan. 15, '92.

G. Rau, Times Building, N. Y.

Dear Sir: Yours of the 13th is to hand, which seems to be one on us. The letter intended for you was probably sent to some one else.

We meant to have wrote you at that time; inasmuch as we had made the agreement with Mr. Saloman, your agent, to sell you the feathers at 4¾ cents, delivered in New York, subject to sight draft as soon as shipped, the matter must stand that way.

Can not see that it makes any material difference to you, inasmuch as we guarantee the weights and quality of goods shipping.

When you are ready for a car, give us plenty of time, because we have to re-sack all here before shipping, which will probably take about ten days for each carload.

Yours truly,

H. Trumbull,

per M."

It will be observed that in this letter of the appellee, dated January 15th, he refers to the agreement he had made with appellant's agent, of which appellant's letter of the 9th was a confirmation, and in replying particularly to the proposition of appellant to pay upon receipt of documents, probably meaning shipments or bills of lading, he declines to consent to such proposition, and says that the matter must

stand as agreed with the agent, "subject to sight draft as soon as shipped."

We regard this subsequent correspondence as entitled to prevail over the denial on the trial, by appellee, that he received the letter of January 9th.

Another still later letter of appellant also referred to his letter of January 9th, and we fail to find in any of the letters of the appellee any disavowal of the receipt of such letter. We are satisfied that the record, when considered altogether, shows conclusively that appellee did receive appellant's letter of January 9th. And, therefore, whether the memorandum of sale executed and delivered by appellee was absolute, or depended upon an acceptance by appellant, is out of the case, for if the latter be the fact, appellant's letter of January 9th was a complete acceptance of the contract.

The burden was upon the appellee to show that the pencil memorandum made by him upon the separate paper, containing shipping directions left with him by appellant's agent, was put there in the presence and knowledge of the agent at the same time the contract of sale was given, and was made for the purpose of expressing a condition upon which such contract was to be performed by appellee.

This the appellee has failed in doing. His testimony upon that point was denied in every essential by the agent, and no other person testified upon that point.

Furthermore, in none of the frequent correspondence that passed between the parties, concerning the carloads that were shipped by the appellant for February and March, was any mention whatever made by either party of any such condition as existing, although the correspondence makes frequent reference to shipments being made so as to meet certain European steamers upon which appellant apparently expected to reship the feathers abroad. It was not until in appellee's letter of April 13, 1892, that any mention was made of any understanding concerning shipments being requested by any particular day in a month, and it was then stated as "according to understanding," but without saying

Rau v. Trumbull.

what the understanding was. Such circumstance tended, to some extent, at least, to cast the preponderance and weight of evidence upon the side of the appellant, and certainly deprived appellee of all claim to a preponderance in his favor.

We might add that there was evidence in the case tending to show that in April an advance in the price of feathers in New York occurred, but we will not comment upon it.

Under such circumstances, the claim of appellee that the pencil memorandum made by him upon the paper containing the shipping directions was a part of the contract that was made with appellant's agent, must fall.

Among the instructions given for the appellee was the following:

" 7. The jury are instructed that the memorandum in evidence as ' Plaintiff's Exhibit 1,' and signed H. J. Trumbull, is not of itself a contract. That to make it a binding contract an acceptance thereof by the plaintiff or some one duly authorized by him, was necessary."

By " Plaintiff's Exhibit 1," is meant the contract of sale executed by appellee.

To say the least, such instruction was calculated to grossly mislead the jury, and should not have been given in the form in which it was. The paper was evidence of a contract, though not necessarily conclusively so, but to tell the jury that it was no contract, was to mislead them into believing that it was not even evidence of one.

Another instruction, the second, given for appellee, was as follows:

" 2. If the jury believe, from the evidence in the case, that the plaintiff might have obtained and purchased, delivered in New York, full fleeced turkey body feathers, at the several times when the plaintiff claims the same should have been delivered in New York by the defendant, and at a price not exceeding 4¾ cents per pound; then the jury are instructed that the plaintiff can not recover in this case."

Such instruction does not accurately state the law. It was equivalent to telling the jury that though the appellee had broken his contract, yet if appellant might have pur-

chased feathers in any market in the world, delivered in New York at the price contracted for by appellee, no recovery, not even nominal damages, could be had.

Such is not the law.   Appellant was not bound to buy the feathers anywhere to be entitled to a recovery.   Summers v. Hibbard, 153 Ill. 102.

Besides, the instruction omitted all reference to the quantity of feathers that might so be purchased.   There was evidence tending to show that feathers became scarce as the season in question advanced.   And an instruction that omitted all reference to the price at which feathers sufficient to satisfy the contract could be bought in New York was bad.

We do not mean to give sanction to all the other instructions by mentioning only these two.   Some of them are, surely, close up to the line of error, but we will not take time to consider them.   Their faults, if any, can be avoided by counsel on another trial.   It was clearly shown that there was a market price in New York, during the months of April, May, June and July, 1892, for feathers of the kind bargained.

The measure of damages, if the appellant shall be entitled to recover more than nominal damages, is the difference between the contract price and the market value of such feathers in New York at the time they should have been delivered.   Trunkey v. Hedstrom, 131 Ill. 204.

There being a market price for feathers in New York, the evidence of the market value of feathers in Chicago, during the month in question, was only admissible, if at all, for the purpose of contradicting or explaining, or aiding, appellant's evidence concerning the market value in New York, in view of the evidence tending to show that Chicago was the controlling market in such commodity.

And to have obviated the alleged error in admitting evidence of the Chicago price, an instruction that such evidence was competent, and should be considered only in aid of determining the true market value in New York, should have been formulated and given by the court.

The judgment will be reversed and the cause remanded for another trial.